UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN L. SCHULTZ, )
)
    Plaintiff, )
) Case No. C05-1396-RSM-JPD
  v. )
)
JO ANNE B. BARNHART, Commissioner ) REPORT AND RECOMMENDATION
of Social Security Administration, )
)
    Defendant. )
_____ )

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Kevin Schultz appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the decision be affirmed.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-two-year-old man with a general equivalency degree and some training as an auto body technician. AR 131. He has past work experience as a roofing supply delivery driver, auto body technician, cook, and sales lot attendant. AR 163, 386. On April 8, 1994, plaintiff was working as an auto body technician under a car when the hydraulic

REPORT AND RECOMMENDATION
PAGE -1

lift failed and the car fell on his back. AR 125, 196. He filed for SSI benefits and received them from August 1995, until January 2002, when they were canceled due to excess resources. AR 15.

On August 16, 2002, plaintiff filed a second application for SSI. AR 112-16. He alleged that he became disabled on April 8, 1994, as a result of spinal stenosis, paralysis in the legs, severe back pain, restricted blood flow, and numbness.[1] AR 125. This second application was denied both initially and upon reconsideration. AR 36-39, 47-49. Plaintiff requested an administrative hearing which was conducted on December 4, 2004. AR 50, 346-90. On March 9, 2005, the ALJ issued a decision finding plaintiff not disabled. AR 15-26. He found that although plaintiff was unable to perform his past relevant work and had no transferable skills, there were other types of sedentary work plaintiff could perform that existed in significant numbers in the national economy. AR 25.

Plaintiff appealed the decision, but the Appeals Council denied his request for review. AR 7-9. The ALJ's March 9, 2005, decision therefore serves as the Commissioner's final decision for purposes of judicial review.

### III.  JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) (2005).

### IV.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th

---

[1] Although plaintiff's application alleged an onset of April 8, 1994, the ALJ found that he engaged in substantial gainful activity through December 2002. AR 22, 25. Plaintiff does not contest this finding; he concedes that he was engaged in substantial gainful activity through December 24, 2002 (the date he re-injured his back while working). Op. Br. at 10. This presumably is plaintiff's alleged onset date.

REPORT AND RECOMMENDATION
PAGE -2

01  Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is

02  defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

03  as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v.*

04  *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility,

05  resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53

06  F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational

07  interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*,

08  278 F.3d 947, 954 (9th Cir. 2002) (internal citations omitted).

09  V.  EVALUATING DISABILITY

10        As the claimant, Mr. Schultz bears the burden of proving that he is disabled within the

11  meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)

12  (internal citations omitted). Disability is defined as the "inability to engage in any substantial

13  gainful activity by reason of any medically determinable physical or mental impairment, which

14  can be expected to result in death, or which has lasted or can be expected to last for a

15  continuous period of not less than twelve months[.]" 42 U.S.C. §§ 423(d)(1)(A),

16  1382c(a)(3)(A). A claimant is disabled only if his impairments are of such severity that he is

17  not only unable to do his previous work, but cannot, considering his age, education, and work

18  experience, engage in any other substantial gainful activity existing in the national economy.

19  *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *See also Tackett v. Apfel*, 180 F.3d 1094,

20  1098-99 (9th Cir. 1999).

21        The Social Security regulations set out a five-step sequential evaluation process for

22  determining whether a claimant is disabled within the meaning of the Social Security Act. *See*

23  20 C.F.R. § 416.920. At step one, the claimant must establish that he is not engaging in any

24  substantial gainful activity. 20 C.F.R. § 416.920(b). If the claimant establishes that he has not

25  engaged in any substantial gainful activity, the Commissioner proceeds to step two. At step

26  two, the claimant must establish that he has one or more medically severe impairments or

REPORT AND RECOMMENDATION
PAGE -3

combination of impairments that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. § 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. § 416.920(d). A claimant who meets or equals one of the listings for the required twelve month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether the claimant can still perform that work. 20 C.F.R. § 416.920(f). If the claimant is not able to perform his past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(g); *Tackett*, 180 F.3d at 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI. DECISION BELOW

On March 9, 2005, the ALJ issued a decision finding:

1. The claimant has engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's degenerative disc disease and a personality disorder with narcissistic features are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body

REPORT AND RECOMMENDATION
PAGE -4

of this decision.

6. The claimant is unable to perform any of his past relevant work. (20 CFR § 416.965).

7. The claimant is a "younger individual" (20 CFR § 416.963).

8. The claimant has a "high school (or high school equivalent) education" (20 CFR § 416.964).

9. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 416.968).

10. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

11. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a miscellaneous small parts assembler, unskilled and sedentary, with 800 positions in Washington state and 39,600 in the United States; produce inspector/tester/sorter, unskilled and sedentary, with 300 positions in Washington state and 14,500 in the United States; and hand packer, unskilled and sedentary, with 200 positions in Washington state and 9,350 in the United States.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

AR 25.

## VII. ISSUES ON APPEAL

There are four primary issues raised in plaintiff's brief:

1. Did the ALJ Erroneously Evaluate the Medical Evidence?

2. Did the ALJ Erroneously Fail to Consider the Testimony of the Medical Expert?

3. Did the ALJ Err Regarding Plaintiff's Subjective Pain Testimony? and

4. Did the ALJ Err By Relying Upon Evidence Not Contained in the Record?

REPORT AND RECOMMENDATION
PAGE -5

## VIII.  DISCUSSION

### A.  The ALJ Properly Evaluated the Medical Evidence.

Plaintiff's challenge to the ALJ's evaluation of the medical evidence essentially raises two issues.  First, the plaintiff argues that the ALJ ignored the opinions of several treating physicians.  Second, he argues that the ALJ erred by according more weight to the examining physicians than to the treating physicians.

#### 1.  The ALJ Did Not Ignore The Opinions of Treating Physicians.

Plaintiff asserts that the ALJ "simply ignored" the medical opinions of treating physicians Souri, Maiorca, Kaler, and Hurley.  Op. Br. at 12.  This argument is without merit.  The ALJ explicitly referred to Dr. Souri's treatment notes from January 11, 2000.  AR 17.  He noted that Dr. Souri diagnosed "mild stenosis . . . and posterior disc bulges" but that he observed no disc herniation or nerve root damage.  AR 17.  Moreover, Dr. Souri did not opine that plaintiff was disabled; to the contrary, he opined in 1995 that plaintiff could perform sedentary work.  AR 266.

Similarly, the ALJ did not ignore the opinions of treating physicians Maiorca, Kaler, and Hurley (the "Spanaway General Physicians").  These physicians treated plaintiff from approximately December 26, 2002, to February 3, 2003, after a work-related re-injury to his back.  AR189, 301-08, 336-38, 340-45.  They diagnosed plaintiff with "lumbar strain with radiculopathy" and prescribed physical therapy and anti-inflammatory medication.  AR 304-09.  These physicians opined on approximately half a dozen different occasions that plaintiff should refrain from work for one-to-two week periods, but they offered no opinion regarding permanent disability.  20 C.F.R. § 416.909 (explaining that impairment(s) must last or be expected to last at least twelve months).  AR 22, 304-09, 337-45.  The ALJ evaluated these opinions and observed that they did not impose "any long-term work restrictions."  AR 22.

Plaintiff also takes issue with the ALJ's finding that no treating or examining doctor has limited the claimant from all work activity.  Op. Br. at 13 (referring to AR 21).  He argues

REPORT AND RECOMMENDATION
PAGE -6

that Drs. Maiorca and Hurley imposed such limitations when they issued "Disability Certificates" that recommended he take several one-to-two-week absences to facilitate his recovery.[2] *Id.* Plaintiff is correct that the ALJ's statement was inaccurate, but it appears to have been only a scrivener's error. On the following page of the decision, the ALJ clarifies that "no treating or examining physician imposed any *long-term* work restrictions" and then discusses the Spanaway General Physicians' opinions plaintiff identifies. AR 22 (emphasis added). Hence, the ALJ understood that several treating physicians did in fact impose temporary work restrictions.

Finally, plaintiff asserts that the ALJ failed to consider Dr. Melson's November 2002, opinion which expressed doubt about plaintiff's ability to work on a consistent basis. Op. Br. at 13. In fact, however, the ALJ explicitly addressed this opinion. AR 18. He recited its findings, but noted it conflicted with the Disability Determination Services ("DDS") physicians' opinions. AR 18. Those physicians believed Dr. Melson's opinion was overly restrictive and inconsistent with other evidence throughout the file; the ALJ agreed. *Id*. The plaintiff's argument that the ALJ ignored a variety of treating medical opinions is therefore without merit.

    2.    <u>The ALJ's Evaluation of the Medical Evidence Is Supported By Substantial Evidence</u>.

Plaintiff also argues that the ALJ erroneously relied on the opinions of several examining physicians over the opinions of his treating physicians. Op. Br. at 9, 11, 13. This argument, too, lacks merit.

    a.    <u>Physical Evidence</u>.

The medical record in this case spans more than a decade of treating opinions, none of which describe permanent functional limitations or disability. For instance, following

---

[2] The "Disability Certificates" were apparently issued in connection with plaintiff's application for State Labor and Industries benefits.

REPORT AND RECOMMENDATION
PAGE -7

01  plaintiff's initial injury in 1994, Dr. Souri diagnosed him with lumbar stenosis and
02  radiculopathy.  AR 266.  In a 1995 letter to the State Department of Labor and Industries
03  ("L&I"), Dr. Souri opined that plaintiff could perform sedentary work, with restrictions on
04  bending, twisting, and overhead work.  AR 266.  He believed plaintiff could regularly lift
05  fifteen pounds and occasionally thirty pounds.  *Id*.  Although these opinions were prior to
06  plaintiff's alleged onset date, Dr. Souri stated in 2002 that he believed plaintiff would "be
07  suitable for a sedentary or light job."  AR 259.  The treating physicians at Spanaway General
08  also diagnosed plaintiff with lumbar strain and radiculopathy.  Although they recommended
09  limited time off work, they offered no opinion as to permanent disability or any specific
10  functional limitations.  AR 304-09.  Thus, no treating physician offered a conclusive opinion
11  regarding disability.

12        Two examining neurosurgeons diagnosed plaintiff with similar back impairments, but
13  did not offer an opinion as to disability or other functional limitations.[3]  On referral from the
14  Spanaway General Physicians, Dr. Brown examined plaintiff and reviewed his most recent
15  MRI and EMG.  AR 304, 333.  He concluded that plaintiff had degenerative disc disease and
16  stenosis "at almost every level[,]" but did not find any evidence of root compromise.  AR 333.
17  Dr. Brown then referred plaintiff to another neurosurgeon, Dr. Wang, who "completely
18  agreed" with Dr. Brown's assessment and concurred that plaintiff had "no findings consistent
19  with radiculopathy."  AR 329.  Hence, while plaintiff was consistently diagnosed with various
20  back impairments, neither his treating physicians nor his examining specialists provided any
21  definitive description of disability or specific functional limitations.

22        Several examining physicians, however, did offer opinions as to plaintiff's ability to
23  work.  For instance, in January, 2002, three physicians conducted an extensive physical and
24  mental evaluation of plaintiff in connection with an L&I claim.  AR 244-58.  They diagnosed

25
26      [3]Dr. Wang's report indicates that she does not give disability opinions and suggests that Dr. Brown does not given them either.  AR 329.

REPORT AND RECOMMENDATION
PAGE -8

him with degenerative disc disease associated with mild stenosis, but concluded he could perform work that did not involve repetitive bending and lifting. AR 251-52. A separate RFC Assessment form made similar findings in December 2002, and March 2003. AR 282-88. The ALJ evaluated this evidence. He recounted the findings of each doctor and concluded that they resulted in the severe impairments of degenerative disc disease and a personality disorder, findings plaintiff does not specifically challenge. AR 19. Although plaintiff understandably would prefer a different interpretation, the ALJ's was reasonable and should be affirmed. *Thomas*, 278 F.3d at 954 (internal citations omitted).

b. <u>Mental Evidence</u>.

The ALJ also evaluated and adequately discounted the only opinion to suggest plaintiff's mental impairments would preclude him from work. Following a November 2002, examination, Dr. Melson opined that plaintiff was not "capable of performing work activities on any consistent basis." AR 295. Subsequent examinations by other examining doctors, however, produced different results. Drs. Van Dam and Eather explicitly disagreed with Dr. Melson and opined that plaintiff had only mild to moderate limits in every functional area but his ability to interact with others. AR 296-98. Given this conflict, the ALJ was obliged to provide specific and legitimate reasons for rejecting Dr. Melson's opinion. *Moore v. Commissioner of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (quoting *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).

The ALJ satisfied this standard. The DDS physicians offered a thorough narrative explanation of their findings and the record and concluded that, despite his mental impairments, the plaintiff did not meet a listing. Rather, he was capable of performing simple and some complex tasks. AR 296-99, 315-27. The ALJ concluded that the DDS opinion was more thorough and consistent with the record and that it sufficiently explained why its results differed from Dr. Melson's. AR 18, 20. He also found that the DDS findings were more consistent with plaintiff's activities of daily living, which suggested only mild to

01  moderate limitations.  AR 18.  This evaluation complied with the requirements set out in
02  *Moore*.

03        B.    <u>The ALJ Provided Sufficient Reasons for Rejecting the Medical Expert's Testimony.</u>

Plaintiff argues that the ALJ erroneously rejected the testimony of Dr. Karbelnig, the medical expert who testified the hearing.  Op. Br. at 14.  Dr. Karbelnig testified that plaintiff met Listing 1.04, the listing for disorders of the spine.  AR 351.  His opinion relied upon Dr. Souri's reports, as well as plaintiff's 2001 MRI, the 2002 independent L&I evaluation, and Dr. Brown's 2003 examination.  AR 351-52.

The ALJ noted that Dr. Karbelnig's opinion appeared inconsistent with the 2003 MRI and EMG results and he specifically asked the doctor to explain those discrepancies.  AR 352-53.  In response, Dr. Karbelnig's could only defer to Dr. Souri's pre-2003 MRI/EMG results.  *Id*.  Similarly, the ALJ specifically asked Dr. Karbelnig to explain why Dr. Wang's findings did not undermine his opinion.  AR 355.  Dr. Karbelnig agreed that Dr. Wang's opinion showed no evidence of radiculopathy, but, again deferred to Dr. Souri's pre-2003 opinion.  AR 356.  Dr. Karbelnig's opinion therefore failed to account for the 2003 MRI and EMG, as well as the opinion of Dr. Wang, and it conflicted with the examining DDS opinion.

In light of this conflict, the ALJ preferred the DDS opinions because he determined the former to be more "consistent with the record as a whole."  AR 20.  He pointed out that the DDS opinions relied on Dr. Souri's notes, but nonetheless found him able to work.  AR 20.  The ALJ also justified preferring the DDS opinion because it was "based on more recent medical evidence" including the 2003 MRI and EMG.  AR 20.  This was not an unreasonable interpretation of the medical evidence.

Finally, the ALJ discounted the reliability of Dr. Karbelnig's opinion by pointing out

REPORT AND RECOMMENDATION
PAGE -10

that Dr. Karbelnig was unfamiliar with the "Waddell signs" Dr. Wang had observed.[4] AR 20 (referring to AR 328). At the hearing, the Dr. Karbelnig stated that he "[didn't] really know" what Waddell's signs were. AR 356. This also impacted the weight and the value of Dr. Karbelnig's opinion. AR 20. Again, this is not an unreasonable conclusion on the part of the ALJ.

An ALJ must explain the weight given to such non-examining opinions and provide reasons for rejecting the opinions. *See* SSR 96-6p; *see also Andrews*, 53 F.3d at 1041. The ALJ did so. The role of this Court is limited. As noted previously, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews*, 53 F.3d at 1039. Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusions must be upheld. *Thomas*, 278 F.3d at 954. It is possible to interpret the medical evidence in the fashion urged by plaintiff. In this case, however, it simply cannot be said that the only rational interpretation of conflicts in the medical evidence is that which is advanced by the plaintiff. The analysis of the medical opinions and the conclusions drawn therefrom by the ALJ is supported by substantial evidence in the record and accordingly, must be affirmed.

C.    <u>The ALJ Did Not Err in His Evaluation of Plaintiff's Testimony</u>.

Plaintiff argues that the ALJ erred in his evaluation of plaintiff's testimony regarding the extent of his pain. Op. Br. at 15. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit their testimony as to the severity of

---

[4]"Physicians use Waddell tests to detect nonorganic sources, such as psychological conditions or malingering, for lower back pain. There are five types of Waddell's signs. '[A] finding of three or more of the five types is clinically significant. Isolated positive tests are ignored.' Gordon Waddell et al., *Nonorganic Physical Signs in Low-Back Pain*, 5 Spine 117, 118 (Mar.-Apr.1980); *see also* 5 Attorneys' Textbook of Medicine ¶ 15A.83 (Roscoe N. Gray and Louise J. Gordy eds., 3d ed. 2000) ("While a positive test in one category is not considered conclusive, when three of the five categories are positive, there is a high probability of nonorganic pathology.")" *Reinertson v. Barnhart*, 127 Fed.Appx. 285, 289 (9th Cir. 2005) (unpublished case).

symptoms solely because they are unsupported by objective medical evidence. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted).  Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *Id*. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."[5]  *Id*.

The ALJ found that plaintiff's "allegations regarding his limitations are not totally credible." AR 25.  Because there is ample evidence that plaintiff suffers from severe back impairments that could reasonably cause the pain he alleges and because there was no suggestion of malingering by the plaintiff, the ALJ was obligated to provide clear and convincing reasons for discrediting plaintiff's subjective pain testimony.

The ALJ identified his reasons for discounting plaintiff's credibility.  First, the ALJ identified inconsistencies in plaintiff's alleged pain levels and his activities of daily living.  For instance, in one daily living questionnaire plaintiff alleged he could not lift more than fifty pounds or stand more than four hours per day, whereas in another he stated that he could lift only ten pounds and stand for only an hour and twenty minutes.  AR 125, 140-41.  The ALJ also noted that plaintiff reported that he could not bend, but indicated that he was able to vacuum, wash dishes, and wash clothes.  AR 21 (citing AR 119-23).  He also pointed out that plaintiff could essentially perform all of his household chores and drive for as many as sixty miles.  The plaintiff also regularly went out to eat, took walks, and attended basketball games and movies.  AR 22.  The ALJ properly concluded that these activities were not entirely consistent with the continuous and extreme pain plaintiff alleged.  *See Light v. Social Sec.*

---

[5]The ALJ may consider ordinary techniques of credibility evaluation including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

*Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ also observed that plaintiff had engaged in temporary work while his disability application was pending and that he testified to seeking other work as well. AR 22. The record confirms that plaintiff performed temporary work at a Christmas tree lot in December 2002, eight years after his alleged onset, when he re-injured himself. AR 173, 328. Although temporary symptom-free periods do not preclude a finding of disability, *Lester*, 81 F.3d at 833, plaintiff's work does suggest he was not as limited as he alleged. The ALJ also recounted the medical evidence that tended to show plaintiff's condition was stable and not inconsistent with certain types of work. AR 22. Together, the reasons proffered by the ALJ satisfy the clear and convincing standard supporting his adverse credibility determination.

### D. The ALJ's Observations Not In the Record Constitute Harmless Error.

In addition to the reasons set forth above, the ALJ also discredited plaintiff's testimony because after the hearing, he observed plaintiff walk down the street for two blocks without any sign of limitation. *Id*. Plaintiff argues that the ALJ erroneously relied on this evidence because it was not contained in the record and he did not have an opportunity to cross-examine. Op. Br. at 16.

Although the rules of evidence are typically not applicable in administrative hearings, *Bayless v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005), it is error for an ALJ to rely upon evidence not in the record. *Albalos v. Sullivan*, 907 F.2d 871, 874 (9th Cir.1990) (per curiam). Accordingly, it was error for the ALJ to rely upon and cite the plaintiff's walk after the hearing to support his decision. However, in this case, the error is properly categorized as harmless. The plaintiff's walk was just one of many reasons offered for finding plaintiff to support the adverse credibility determination. Even if the ALJ had not relied upon the post-hearing observations, the other reasons he gave to support his adverse credibility finding were sufficient. *Batson v. Comm'r. of Social Sec. Admin.*, 359 F. 3d 1190, 1197 (9th Cir. 2004).

## IX. CONCLUSION

For the reasons set forth above, the Court recommends that the decision of the Commissioner be affirmed. A proposed Order accompanies this Report and Recommendation.

DATED this 21st day of June, 2006.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -14